# H. H. SCOVILLE ET AL.

*v.*

# W. B. HADLEY, Acting Auditor of Porto Rico.

1. Under § 36 of the act of Congress approved April 12, 1900 (31 Stat. at L. 77, chap 191), providing a civil government for Porto Rico, commonly known as the Foraker law, the salaries and expenses of the district court of the United States for Porto Rico are payable on the warrant of the auditor, countersigned by the governor of the island, and the duty of at least the auditor in that regard is purely ministerial.

2. It is not within the power of the legislative assembly of the island of Porto Rico to pass any law contrary to such organic act, that will hamper that court or its officers in the exercise of the judicial functions conferred upon it by national authority.

3. The district court of the United States for Porto Rico is, by said act of Congress, vested with power to appoint all its own necessary officials other than those otherwise provided for in said act, and it is not within the power of the local assembly to appoint the insular paymaster as an official of said court.

4. All courts, when legally created, have power inherent in themselves to issue all writs necessary to preserve their existence, independent of the question as to whether direct power is given to them to issue writs of mandamus; and hence they can issue such writs where the same becomes necessary for such purpose, in order to oblige officials over whom they have jurisdiction to perform a ministerial duty affecting the existence of the court.

5. Where a duly and legally created court is in the regular performance of its functions, and issues a peremptory writ of mandamus to enforce the performance of a ministerial act by an official, and where the refusal to perform such ministerial act threatens the existence of the court, the respondent is not entitled to supersedeas on taking an appeal, and the appeal should not be granted until after the performance of the duty commanded by the writ.

Scoville v. Hadley.

Case decided on points as above, and peremptory writ issued January 7, 1908.

---

*Mr. N. B. K. Pettingill,* for petitioners.

*Mr. J. Henri Brown,* Assistant Attorney General of Porto Rico, for respondent.

## Statement.

This was an application for a writ of mandamus by the petitioners, who were respectively the clerk and marshal of this court, against the acting auditor of the island of Porto Rico, to compel him to draw his warrants so that the same might be countersigned by the governor in payment of the salaries and expenses of this court. Full argument was had, and all the points involved therein were decided as in the foregoing syllabus set out.

A peremptory writ was issued, and an appeal without supersedeas being allowed was thereafter taken from it to the Supreme Court of the United States, where the case is still pending. The questions decided in the matter are so unique, and the conditions that brought them about are so unusual, as that, even though matters were amicably settled shortly after the appeal, and all proceedings are to be dismissed, still the record is well worth preserving; and, while it is rather prolix, no better statement of the matter can be made than those embodied in

Scoville v. Hadley.

the findings of fact and law on the appeal, which RODEY, Judge, made and settled as follows:

H. H. SCOVILLE, Clerk of said Court; H. S. Hubbard, Marshal thereof; and Salvador Frias, a Juror, Plffs.

*v.*

W. B. HADLEY, Acting Auditor of Porto Rico, Dft.

In the Matter of Mandamus for the Payment of Expenses of Said Court.

Findings of Fact and Law on Appeal to the Supreme Court of the United States.

The defendant has prayed and been granted an appeal to the Supreme Court of the United States in the above-entitled matter, and it becomes necessary, under the rules, for us to make the following statement of our findings of fact and law in the premises; but the conditions are such that it is practically impossible for us to make separate succinct findings of law and fact, and therefore both are embodied in the following statement:

This court was created by § 34 of the act of Congress of April 12, 1900, 31 Stat. at L. 84, chap. 191, *q. v.* It was shortly thereafter organized, and proceeded in the exercise of its functions. For the first year after its existence the salaries of its judge and other officers, as well as all its expenses, were paid out of the national Treasury the same as in the case of

any other court of the United States. Then a change was made by order of the Department of Justice, and the salaries and expenses of the court were thereafter paid under § 36 of the organic act aforesaid, *q. v.,* on the warrant of the auditor of the island of Porto Rico, countersigned by the governor thereof, in the following manner. The form of procedure in the payment of these salaries and expenses from 1902 to the middle of the year 1907 was, that the United States marshal submitted to the court monthly, in advance, or at the proper time in each month, an estimate of the amount of money he would require for such monthly expenses. The court, after examining the same, would indorse its approval thereon, and make an order to the same effect. The requisition was then submitted to the auditor of the island, who issued his warrant for the amount called for, and the same was immediately thereafter presented to the governor, who countersigned it, and the treasurer of the island paid the money to the marshal. The marshal thereafter, at the proper time, issued his personal checks to the judge and other officers of the court for their several salaries, and caused them to sign proper pay rolls therefor in duplicate. The marshal then paid all bills and expenses of the court, which had previously been submitted to the court for its approval, from the money thus in his hands, and then submitted the pay rolls and all these expense accounts, the latter accompanied by proper vouchers therefor, to the auditor of the island, who in turn duly and finally audited and allowed or disallowed the same as he thought proper, and the whole matter of accounting was carried on and settled in that way.

On March 14, 1907, the insular legislative assembly, presumably on the request of the auditing department of the island,

passed a law (Session Laws P. R. 1907, p. 191) which reads as follows:

"Section. 1. Disbursements of public moneys or funds of the people of Porto Rico shall not be made except on warrants drawn by the auditor of Porto Rico, and countersigned by the governor, in payment of claims or accounts approved by the head of the department in which said claims or accounts have arisen, or as authorized by law, and which have also been examined, settled, and certified for payment by the auditor: Provided, that this section shall not be interpreted to prevent, at any time, the appointment of special disbursing officers for certain appropriations, where, in the opinion of the auditor and upon the approval of the governor, it is deemed necessary.

"Section 2. The bureau of disbursements of the treasury department is hereby abolished, and a bureau of the paymaster in the treasury department created, to consist of a paymaster, assistant paymaster, who shall act as a paymaster in the latter's absence, and such clerks and other help, with such remuneration as the legislative assembly may, from time to time, determine. Any appropriation that may be made for the support of the bureau of disbursements of the treasury department for the fiscal year ending June 30, 1908, shall be available for the payment of the salaries of the paymaster, assistant paymaster, clerks, and other assistants of the paymaster's bureau of the treasury department, hereby created, and also to pay the compensation of the additional clerks in the office of the auditor as the legislative assembly may, from time to time, determine. The paymaster and assistant paymaster shall furnish adequate bonds, in the form and manner prescribed by law.

"Section. 3. The duties of the bureau of the paymaster

shall be to make payments by means of paymaster's checks upon such warrants of the auditor, countersigned by the governor, as the treasurer may designate. The treasurer shall draw his draft in favor of the paymaster for such warrants, and the paymaster shall make the several payments mentioned therein. The paymaster shall keep such records and books of accounts as the treasurer and auditor may require.

"Section 4. Such sections or parts of the Political Code and all other laws and parts of laws in conflict with the provisions of this act are hereby repealed."

On July 1st, 1907, the auditor of the island notified the United States marshal that this local act of the assembly applied to this court, and that he would not thereafter honorr requisitions made in the usual way, but that the salaries and expenses of the court would have to be paid through a local paymaster, as in all other cases, and that no accounts, salaries, or expenses of the court of any kind would be permitted to be paid unless first approved by the head of the department in which the same arose, and only after they had previously been examined, settled, and certified for payment by the auditor of Porto Rico.

We met the auditor about this time, and protested against his effort to have the aforesaid local act apply to this court, and contended that, even by its terms, it did not so apply, and that, anyway, to pass it was an *ultra vires* act as to the local assembly. That it would hamper and cripple the court in its functions. That it would often result in the insular auditor being in fact the arbiter as to whether prosecutions should be begun, and would, when the court was in outside districts, often leave it and its officers helpless.

About this time the marshal as well as the clerk of the court

Scoville v. Hadley.

complained that this was an attempt not authorized by law, to oust the United States marshal as disbursing officer of the court, and to reduce him to the condition of a bailiff. We thereafter went personally to see the auditor again, and he continued to claim that the law did apply to this court, but stated that, if a letter from the Attorney General could be procured, requesting his department to waive the provisions of this law as to this court, that he would acquiesce. The court made a trip to Washington, and conferred with the office of the Attorney General of the United States about it, and secured such a letter from him. When the auditor on the island here received the letter, he did not think that it was any expression of opinion, or any command on the part of the Attorney General to him, and so he declined to waive any of the provisions of the law as to this court. At this time the court was on its vacation in the States, and all officers of the court remained thereafter without any salary or compensation for several months; besides, no bills of the court of any kind or character were paid during that period, nor did the court receive any money for its use from any source whatever. On returning to the island in the fall, and resuming business in open court, we found it difficult to proceed without funds. Personally the court made several trips to see the acting governor and the acting auditor about the matter, with a view to getting them to waive their position that this law applied to this court, but without avail.

We also did a very considerable amount of writing about the matter to the office of the Attorney General of the United States, and cabled an account of the matter to the President of the United States, hoping that a word from him to the governor and auditor of Porto Rico, who were present in Washing-

ton at this time, might result in a settlement of the dispute there. The President, however, did not receive this cablegram, as he had that day started on his hunting trip to the southwest, and the matter was therefore referred to the office of the Attorney General. The court made another trip to see the acting auditor about the matter, but could not come to any understanding that this law should, in whole or in part, be waived as to this court. The acting governor thereupon wired the whole condition to the governor and auditor, who were both then present in Washington. They applied to the Attorney General for an opinion in the matter, which was refused, on the ground that such request must come direct from the President of the United States or from a cabinet officer. Thereupon the governor and auditor applied to the Honorable the Secretary of the Treasury, and procured him to make such request of the Attorney General. Several weeks thereafter the opinion of the Attorney General came to hand. He held that the local legislative assembly had power to pass such a law, but that the local auditor had power, under its terms, and no doubt would exercise it, to advance money to the marshal, and he stated his views in the following words: "The marshal can, and undoubtedly will, be advanced money as a special disbursing officer, to pay witnesses and jurors and all expenses which, from their nature, must be paid without delay."

Immediately thereafter the auditor of the island offered to make the United States marshal disbursing officer of this court for the purpose of settling with jurors and witnesses, but he did not think it necessary to go to the extent suggested by the Attorney General in his opinion, of making the marshal also disbursing officer as to any of the expenses of the court.

Scoville v. Hadley.

Therefore no agreement was arrived at, and the court and its officers still remained without any salaries or expenses. Matters continued in this way for a short time; a term of court came on, grand and petit juries were empaneled and were being discharged hourly, and the bills and accounts for the four months previous, when the court had been without money, kept coming in. The court made another trip to the governor and to the acting auditor, with a view to arriving at some compromise, so as to prevent any unseemly dispute arising that might be a bad example to the people of the island, but still without avail.

After this we could see nothing to be done but to issue orders under the strict letter of § 36 of the organic act aforesaid, against the auditor of the island, so that he might, after, in his discretion, duly auditing the same, issue his warrant therefor, and the governor might have an opportunity to countersign the same, and we therefore proceeded to do this, and thereafter issued such orders, allowances, approvals, and certificates. The acting auditor refused absolutely to act on or allow any of them, although they were often certified copies of orders made in open court. As to some of them, he sent back word that they must be made out on certain vouchers, in accordance with some alleged requirement or regulation of his office, and that, as to any that were to be paid quickly, that could only be done through someone to be named by his office as paymaster for the disbursement of certain of the funds of this court under the local accounting law above quoted, even though the appointment of all subordinate officers of this court is left to the judge thereof under § 34 of the organic act, aforesaid. Jurors and witnesses and others were thus kept seesawing back and forth between the court and the auditing department, and were made to wait around for

IV. Porto Rico—30.

several days without being able to obtain any satisfaction as to how their bills and allowances were to be paid. The situation can be imagined even without reference to the dignity of a court. The clerk and marshal appealed to the court on several occasions to put an end to the matter, and asked that an order to show cause be issued against the acting auditor, and papers were prepared once. or twice, but not served, as it was hoped the difficulty could be avoided. Finally, on the 12th day of November, 1907, the clerk of the court and the marshal repeated these representations to the court, and showed that an approved order and allowance in the sum of thirty-nine dollars and five cents ($39.05), issued to one Salvador Frias, a juror, the day previous, had not been paid, nor had several other allowances and certificates of the same character been paid. The order or allowance so issued to said Frias, and certified to said acting auditor, was in words and figures as follows:

No. 321.                                            Oct. Term, 1907.

United States District Court, ⎱
District of Porto Rico.         ⎰ ss :

It appearing to the court that Salvador Frias, of Humacao, has attended as a petit juror eleven days, at $3 per day, Nov. 12, 13, 14, 15, 16, 18, 19, 20, 21, 22, and 23, ............................... $33.00
and is entitled to 40⅓ miles travel at 15 cents per mile    6.05
                                                        ─────────
It is ordered by the court that he be paid .......... $39.05
        Copied from the Journal.
    San Juan, P. R., Nov. 23, 1907.
                            Attest: H. H. Scoville, Clerk.
                            By: C. A. Davidson, Deputy.

Scoville v. Hadley.

The clerk and the marshal also at this time renewed their application to the court for an order to show cause against the acting auditor. On consideration of the matter, we refused to grant this order to show cause, and stated that we had more than ample personal knowledge of all the facts, and that conditions had become intolerable, and that the issuance of an order to show cause would be useless. That it was, in our opinion, clearly the ministerial duty of the said acting auditor to at once audit all such allowances, accounts, and certificates, and to issue his warrant therefore under § 36 of the organic act, so that such warrants might be countersigned by the governor, and that we were of opinion that this was all the more certainly his duty since the legislative assembly of Porto Rico had, on the 14th day of March, previously appropriated and set aside for the use and benefit of this court, to be used for the purpose of paying the salaries and expenses thereof for the fiscal year beginning July 1st, 1907, previously, the sum of $39,580, no part of which sum had yet been expended, and that we had personal knowledge of the acting auditor's positive refusal to either audit such orders, approved accounts, allowances, or certificates, or issue his warrant for any of the same, and that it would be a useless ceremony to issue an order to show cause against him, and that, as he was doing all this virtually *in facie curiæ*, we would at once issue an absolute and peremptory writ of mandamus against him in the premises, which was thereupon done.

The next morning the attorney general of the island came into court with the acting auditor, and desired to take an appeal from the action of the court in so issuing its peremptory writ of mandamus in the premises. We refused to grant this

Scoville v. Hadley.

appeal unless the attorney general would state that the writ itself had been obeyed, and that we would then willingly grant the appeal, but without supersedeas, on the ground that the very existence and life of the court itself was involved, and that all courts, when legally created, had power inherent in themselves to preserve their existence independent of the questions as to whether direct power was given them to issue writs of mandamus. Whereupon the attorney general properly excepted to this ruling, and then announced that the acting auditor had already obeyed the writ, and would continue to obey it until the further order of court or the reversal of its action by the Supreme Court of the United States. The appeal was then at once granted, as aforesaid, without supersedeas, for the reasons stated, the appellant at once giving a proper bond for costs in the premises. This is all that has taken place in the matter to date.

Signed and settled as the court's specific findings of law and fact, as aforesaid, this 7th day of January, 1908, and ordered to be transmitted with the record to the Honorable the Supreme Court of the United States.